UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
_____

JOSE AVINA, on behalf of himself
 and all others similarly situated,

                                                   Case No.: 21-cv-1993

       Plaintiff,

v.

QUALIA COLLECTION SERVICES

       Defendant.

_____

## DEFENDANT QUALIA COLLECTION SERVICES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### PRELIMINARY STATEMENT

Plaintiff Jose Avina ("Plaintiff") filed this action in Circuit Court of Cook County, Illinois, individually and on behalf of a class, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA"). Defendant Qualia Collection Services[1] ("QCS") sent Plaintiff a dunning letter (the "Letter"), which informed Plaintiff that his debt owed to Capital One, N.A. was assigned to QCS for collection purposes. (Dkt. 1-1, Ex. A).

QCS timely removed Plaintiff's lawsuit to this Court, pursuant to 28 U.S.C. § 1331, given that this Court has subject matter jurisdiction over the FDCPA allegations in the Complaint. Thereafter, QCS moved this Court to dismiss Plaintiff's FDCPA claims, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim.[2] (Dkt. 5).

_____

[1] This Response is being filed by Optio Solutions, LLC. Qualia Collection Services is not an entity. Optio Solutions does do business as Qualia Collection Services.

[2] Plaintiff alleges that the Letter violated the FDCPA for because "it falsely stated that Capital One may make an adjustment to the balance due" it falsely implies that QCS "would obtain a copy of a judgment and mail a copy of same to Plaintiff, despite there being no such judgment." (Dkt. 1-1, ¶¶ 31-33). In addition to the pleaded causes of action, Plaintiff appears to assert the Letter violated the FDCPA because it failed

As articulated in QCS's motion to dismiss, this is a "lawyer's case" as it "alleges a defect of which only a sophisticated lawyer, not the least sophisticated consumer, would conceive." *Ocampo v. Client Servs., Inc.*, 2019 WL 2881422, at *3 (E.D.N.Y. Jul. 3, 2019). Indeed, as aptly stated by the Seventh Circuit, "[a] lawyer's ability to identify a question that a dunning letter does not expressly answer ('Is it possible the balance might increase?') does not show the letter is misleading, even if a speculative guess to answer the question might be wrong." *Koehn v. Delta Outsource Group, Inc.*, 939 F.3d 863, 865 (7th Cir. 2019) (parenthetical in original). The allegations in the Complaint are the types of allegations the *Ocampo* and *Koehn* cautioned against: expanding the scope of the FDCPA beyond what was intended by Congress.

Instead of responding to QCS's Motion to Dismiss, Plaintiff made the subject motion to remand the case back to state court. (Dkt 10). To that end and as eluded to in Plaintiff's motion to remand, Plaintiff attempted to craft his allegations to remain clear of federal court, and for good reason because this Court is well-positioned to see through Plaintiff's meritless FDCPA claims. (Dkt. 10, ¶ 11). On the other hand, state courts, such as the Circuit Court of Cook County, do not have the same level of exposure and experience adjudicating FDCPA cases. Although Plaintiff contends that he filed the Complaint in state court in light of the Seventh Circuit's recent decisions concerning standing under the FDCPA, he provides no arguments in support of that conclusion other than "Plaintiff has not alleged any facts in support of Article III standing as that concept is currently understood in the Seventh Circuit." (Dkt. 10, ¶ 8).

Ultimately, Plaintiff is engaging in a type of forum shopping in an attempt to protect the meritless allegations in his Complaint. Despite Plaintiff's efforts to side step the federal courts

---

to disclose whether interest and fees are accruing, and therefore, the Letter "falsely implied that the debt may be increasing." (Dkt. 1-1, ¶ 22).

with experience adjudicating FDCPA claims, Plaintiff does have standing to litigate this case in federal court. Although QCS is aware of the recent Seventh Circuit jurisprudence limiting Article III standing under the FDCPA, Plaintiff's Complaint sufficiently establishes he suffered an injury-in-fact. Indeed, when courts analyze standing, "allegations matter." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246, 1248 (7th Cir. 2021).

Here, the Complaint alleges that the Letter's statement indicating QCS "could send a copy of a judgment to Plaintiff would make him believe that there was no longer any point to disputing the alleged debt, and that he owed it regardless of whether he believed he did or not." (Dkt. 1-1, ¶ 40). This allegation asserts more than a procedural violation or a general feeling of confusion. As described in further detail below, the Complaint sets forth sufficient facts to establish Article III standing because, among other things, Plaintiff asserts the Letter the caused him "[him] to change [his] course of action or put [him] in harm's way." *Pennell v. Global Trust Management, LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021). Therefore, this Court should determine that it has subject matter jurisdiction in this case, deny Plaintiff's motion to remand, and rule on QCS's motion to dismiss.

## ARGUMENT

### I.  Article III Standing and the FDCPA

To establish standing under Article III of the Constitution, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Ordinarily, it is the plaintiff who bears the burden of demonstrating that the district court has subject-matter jurisdiction over her case and that it falls within 'the Judicial Power' conferred in Article III." *Thornley,* 984 F.3d at 1244. However, "the party that wants the

3

federal forum is the one that has the burden of establishing the court's authority to hear the case." *Id.* At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The allegations of fact – though they must be clearly alleged – "need only 'plausibly suggest' each element of standing, with the court drawing all reasonable inferences in the plaintiff's favor" *Id.* (citing *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015)).

The case-at-bar turns on the "foremost" standing requirement - injury in fact. *See Pennell*, 990 F.3d at 1044. To establish injury in fact, a plaintiff must allege a "concrete and particularized" injury. *Id.* (internal citations omitted). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," and it is concrete if it is "real, and not abstract." *Id.* (internal citations omitted.) A concrete injury, however, "need not be tangible; a risk of real harm can constitute concrete harm." *Spokeo*, 136 S. Ct. at 1549 (internal quotation marks omitted). For a statutory violation, a plaintiff does not automatically satisfy concreteness "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* That is because "a bare procedural violation, divorced from any concrete harm" cannot satisfy the injury-in-fact requirement. *Id.*

In *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019), the Seventh Circuit applied *Spokeo's* holding in the FDCPA context. There, the plaintiff commenced an action alleging the defendant violated the FDCPA because its letter failed to specify that communications sent to dispute or verify the debt must be in writing. *Casillas*, 926 F.3d 333-34. In affirming dismissal of plaintiff's FDCPA claims, the Seventh Circuit held that an FDCPA plaintiff "cannot demonstrate standing simply by pointing to [a debt collector's] procedural violation," and must also "show that

4

the violation harmed or 'presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.' " *Id.* at 333 (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017). In the end, the Court determined that the plaintiff "complained only that her notice was missing some information" that the statute requires, without claiming that the defendant's mistake put her "in harm's way." *Id.* a 334. Said differently, there was "no harm, no foul" because the plaintiff was "not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them." *Id.*

## II.     A Brief Survey of the Seventh Circuit's Post-*Casillas* Decisions

Plaintiff contends that he filed this action in state court after considering recent Seventh Circuit precedent regarding Article III standing in FDCPA cases. (*See* Dkt. 10, at ¶ 3). Specifically, Plaintiff relies on recent Seventh Circuit precedent that establishes a consumer's ability to identify a violation of a consumer protection statutory right does not automatically equate to showing injury-in-fact for Article III standing purposes. *See e.g.*, *Pennell*, 990 F.3d 1041 (holding an allegation that dunning letter caused consumer stress and confusion failed to satisfy concreteness element of injury-in-fact requirement for Article III standing in FDCPA action); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021) (ruling the consumer's assertion that debt-collection letter caused confusion does not allege injury sufficient to confer standing in violation of FDCPA, unless confusion leads consumer to take detrimental step); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020) (finding the consumer failed to adequately plead injury from debt collector's alleged violations of FDCPA after debt collector sent letter overstating balance due on credit card account); *Spuhler v. State Collection Serv., Inc*., 983 F.3d 282 (7th Cir. 2020) (holding consumers failed to demonstrate concrete injury by alleging they received misleading collection letters that lacked statement interest was accruing in violation of FDCPA); *Larkin v. Fin. Sys. of*

*Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020) (finding the plaintiff had no standing to assert bare procedural violation of FDCPA, such that collection letters were false or deceptive, without any other harm).

Collectively, the Seventh Circuit's recent decisions concerning a consumer's standing under the FDCPA establishes this principle: "it's not enough for a FDCPA plaintiff to simply allege a statutory violation; he must allege (and later establish) that the statutory violation harmed him 'or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.' " *Larkin*, 982 F.3d at 1066 (quoting *Casillas*, 926 F.3d at 333). In the context of a collection letter, a plaintiff must allege facts to the effect that "that receiving [a defendant's] dunning letter led her to change her course of action or put her in harm's way." *Pennell*, 990 F.3d at 1045. A review of the Seventh Circuit's precedent concerning standing under the FDCPA and applying it to the facts of this case makes clear that Plaintiff's Complaint alleges more than a bare procedural violation of the FDCPA.

For example, in *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020), the plaintiffs accumulated a $2,000 debt owed to their homeowners' association, at which point defendant sent them a dunning letter that stated it "may seek" foreclosure. *Id.* at 1070. The plaintiffs argued that the letter was "false or misleading because the law firm would have found it too costly to pursue foreclosure to collect a $2,000 debt" and claimed that they were "annoyed or intimidated by the letter." *Id.* at 1070-71. Nevertheless, the Seventh Circuit held that while "[p]estiferous text messages, spam phone calls, and unwelcome faxes [for example] can cause cognizable injury," no such invasion of privacy was alleged by plaintiffs' receipt of this single dunning letter. *Id.* (internal citations omitted). More specifically, the court explained that allegations of annoyance or intimidation were not enough to establish the "concrete and

particularized loss" required to establish Article III standing. *Id.* To the contrary, here, Plaintiff alleges that the Letter caused him more than mere annoyance or intimidation, he contends that the Letter caused him to change is course of action in handling his alleged debt. (Dkt. 1-1, ¶ 40).

Similarly, in *Larkin*, *supra*, the plaintiffs, in two separate cases, commenced actions against the defendant alleging that collection letters they received violated the FDCPA. *Larkin*, 982 F.3d at 1062. Specifically, the plaintiff's generally alleged in their complaints that certain statements collection letters "were false, deceptive, or misleading, or unfair and unconscionable, in violation of §§ 1692e and 1692f." *Id.* But neither complaint contains any allegation of harm – or even an appreciable risk of harm – from the claimed statutory violation." *Id.* at 1066. Because neither of the plaintiffs' complaints contained "any allegation of harm or even an appreciable risk of harm" from the claimed statutory violation, they did not allege a sufficient injury-in-fact to establish standing. *Id.* Unlike the plaintiffs in *Larkin*, Plaintiff's Complaint asserts that the Letter made him believe there was no longer any point to dispute the subject debt, regardless of whether he believed he owed it or not. (Dkt. 1-1, ¶ 40). This an appreciable risk of harm that the FDCPA specifically protects against. *See* 15 U.S.C. § 1692g (bestowing a debtor the right to dispute and verify a debt).

Likewise, in *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020), the plaintiff received a debt collection letter that, she alleged, threatened legal action and amounted to a false representation in violation of the FDCPA. *Id.* at 1067-68. The plaintiff further "asserted that she was confused by the letter's language, [but] she did not tie that confusion to an injury." *Id.* at 1068. Accordingly, the court held that plaintiff lacked standing, explaining that "[a] debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion – if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest

running at a higher rate. But the state of confusion is not itself an injury." *Id.* Without the allegation of detrimental acts, the court again held that "the asserted violation of a substantive right conferred by the Fair Debt Collection Practices Act does not guarantee the plaintiff's standing. There must still be a concrete injury." *Id.* (citing *Larkin*, 982 F.3d at 1060). The facts alleged in *Brunett* are not akin to the fact alleged herein as Plaintiff alleges that the Letter caused him to act to his detriment: forgoing his right to dispute the subject debt because the Letter caused him believe any dispute would be futile. (Dkt. 1-1, ¶ 40). As such, Plaintiff's Complaint does not merely assert he was confused by the Letter.

The court in *Bazile*, *supra*, again emphasized "a plaintiff must do more than allege an FDCPA violation to establish standing; she must also show personal harm." *Bazile*, 983 F.3d at 279. While the Seventh Circuit noted in *Bazile* that "[t]he nonreceipt of information to which a plaintiff is entitled under a statute may amount to a concrete injury," it cautioned that such an omission will only be constitutionally sufficient "if it impairs the plaintiff's ability to use [that information] for a substantive purpose that the statute envisioned." *Id.* at 280 (internal citations and quotations omitted). Here, unlike the allegations in *Bazile*, Plaintiff asserts that the Letter left him misinformed as to his statutory rights as opposed to uninformed. Said differently, Plaintiff contends that the Letter misinformed him to a degree that impaired his ability to dispute the subject debt. (Dkt. 1-1, ¶ 40).

Finally, in *Spuhler*, supra, the Seventh Circuit emphasized "the failure to provide information that is required under the FDCPA inflicts a concrete injury only if it impairs a plaintiff's ability to use the withheld information for a substantive purpose that the statute envisioned." *Spuhler*, 983 F.3d at 286. In this regard, the court reasoned:

> The FDCPA envisions that debtors will use accurate, non-misleading information in choosing how to respond to collection attempts and how to manage and repay their debts. This means that for a concrete injury to result from a dunning letter's exclusion of a statement about accruing interest, ***that exclusion must have detrimentally affected the debtors' handling of their debts***.

*Id.* (internal citations and quotations omitted) (emphasis in original). Contrary to the allegations in *Spuhler*, here, Plaintiff alleges that the Letter detrimentally affected his ability to handle his debt causing him to believe there was no point to dispute his debt because there was already a "judgment" entered against him. (Dkt 1-1, ¶ 40).

As distinguished above and described in detailed below, Plaintiff's alleged harm goes beyond the bare procedural violations of the FDCPA that have been rejected by the Seventh Circuit.

### III.     Plaintiff Alleges Sufficient Facts to Establish Article III Standing

When analyzing a plaintiff's standing in federal court, "allegations matter." *Thornley*, 984 F.3d at 1248. Plaintiff alleges that the Letter violated §§ 1692e(2)(a) and 1692e(5) because the Letter's statement that QCS "could send a copy of a judgment to Plaintiff would make him believe that there was no longer any point to disputing the alleged debt, and that he owed it regardless of whether he believed he did or not." (Dkt. 1-1, ¶ 40). Critically, this allegation does not contend that the Letter left Plaintiff uniformed; rather, the Letter misinformed Plaintiff and affected his ability to assert his rights afforded by the FDCPA.

This distinction has been recognized by the Northern District of Illinois: "[i]f a consumer is misinformed, rather than merely uninformed, the risk of harm is greater." *Pierre v. Midland Credit Management*, *Inc.*, 2019 WL 4059154, at *3 (N.D. Ill. Aug. 28, 2019) (citing *Untershine v. Encore Receivable Mgmt., Inc.*, 2019 WL 3766564, at *3 (E.D. Wis. Aug. 9, 2019). Courts in this District have also found that misinformation conveyed in a collection letter creates an appreciable

risk of harm to a plaintiff. *See Marlene Sparrow Oloko v. Receivable Recovery Services, LLC*, 2019 WL 3889587, at *3 (N.D. Ill. Aug. 19, 2019) (finding injury in fact post-*Casillas* because the letter in question created confusion, presenting an appreciable risk of imminent harm to the interest Congress sought to protect: receiving accurate information about one's debt); *Richardson v. Diversified Consultants, Inc.*, 2019 WL 3216030, at *4 (N.D. Ill. Jul. 17, 2019) (finding injury in fact post-*Casillas* because the plaintiff received a debt collection letter that allegedly misrepresented the amount of debt owed –"an injury of the kind Congress sought to protect against through the FDCPA").

In *Untershine*, the Eastern District of Wisconsin addressed the "appreciable risk of harm" in the context of a plaintiff being misinformed as to how to dispute a debt:

> Nonetheless, it is again a claim of misinformation: the plaintiffs allege that the letter suggested that one sort of dispute could be addressed by phone. When a consumer is misinformed about how to exercise his or her rights under the FDCPA, as opposed to merely uninformed of rights she has no intention of exercising, as was the case in *Casillas*, the court finds an appreciable risk of injury. Protecting consumers from misinformation is a significant goal behind the FDCPA.

*Untershine*, 2019 WL 3766564, at *3. Similarly, in *Nagan v. Option Sols. LLC*, 2020 WL 2473417 (E.D. Wis. May 13, 2020), the court distinguished the risks of harm associated with consumers being uninformed versus misinformed:

> In this case, Plaintiff does not allege that she was deprived of notice of statutory rights but rather asserts that the letter was deceptive and that she did not receive substantive information. In particular, Plaintiff contends she was misinformed about the nature of the settlement offer as well as other details affecting the nature, character, and amount of her debt. She claims that the letter deprived her of truthful, non-misleading information in connection with Defendant's attempt to collect a debt and that she was misled and deceived by the letter. The court finds that Plaintiff has standing to bring her claims…

*Id.* at *3.

Moreover, although *Larkin, supra*, makes clear that "[a]n FDCPA plaintiff must allege a concrete injury regardless of whether the alleged statutory violation is characterized as procedural or substantive[,]" standing may still be established by a showing that the alleged statutory violation "presented an appreciable risk of harm" or that a plaintiff "would have pursued a different course of action were it not for the statutory violations." *Larkin*, 982 F.3d at 1066. Ultimately, as described above, the Seventh Circuit in *Larkin* held that the Plaintiff lacked standing. In doing so, the Court identified scenarios in which a Plaintiff may establish Article III standing for an FDCPA violation:

> Not finding an allegation of injury in the complaints or briefing, we gave the plaintiffs' attorney several opportunities at oral argument to identify a concrete injury that might support his clients' standing to sue. He could not do so. He did not contend, for example, that Finance System's communications ***caused the plaintiffs to pay debts they did not owe or created an appreciable risk that they might do so.*** He did not claim that his ***clients were confused or misled to their detriment by the statements in the dunning letters, or otherwise relied to their detriment on the contents of the letters***. He did not suggest that it was reasonable to infer that Larkin and Sandri would have pursued ***a different course of action were it not for the statutory violations*** (as was the case in *Lavallee*).

*Id.* (emphasis added).

Furthermore, with respect to Plaintiff's alleged harm, the Seventh Circuit's decision in *Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049 (7th Cir. 2019), is particularly relevant. There, the Seventh Circuit distinguished the facts of its case from *Casillas*, determining that a consumer had standing when a debt collector's notice failed to include any FDCPA-required disclosures about the debt collection process. *Id.* at 1052. The court concluded that the debt collector's violation harmed the consumer because she had no information about her right to contest or verify her debt. *Id.* at 1053. If the consumer knew about her rights, she could have exercised them; instead, she

11

lost the opportunity to require the debt collector to pause collection activities or halt litigation. *Id; see also*, *Smith*, 986. F.3d at 710-11 ("We do not hold that someone asserting a violation of § 1692g(a)(3) cannot establish injury; we hold only that Smith did not allege injury[,]" as the district court observed that Smith "***did not allege she had any doubt that she owed the creditor the stated amount of money***. And she failed to allege any injury that flowed from her failure to dispute the debt.") (emphasis added).

Here, Plaintiff asserts the Letter's reference to a judgment made "him believe that there was no longer any point to disputing the alleged debt, and that he owed it regardless of whether he believed he did or not." (Dkt. 1-1, ¶ 40). Said differently, Plaintiff asserts that QCS's alleged violation of §§ 1692e(2)(A) and 1692e(5): (1) created an appreciable risk that Plaintiff would not dispute his alleged debt; (2) misinformed Plaintiff that he could exercise his rights under the FDCPA, namely, disputing his debt; and (3) caused Plaintiff to act to his detriment, i.e., forgoing an opportunity to dispute his debt regardless of whether he believed he owed that debt or not. Thus, like the plaintiff in *Lavallee*, Plaintiff alleges that he lost the opportunity to require QCS to pause collection activities or halt litigation due to the misinformation provided in the Letter's validation notice. And, unlike the plaintiffs' allegations in *Larkin*, Plaintiff's Complaint alleges that the Letter misled him to his detriment and, based on that allegation, it is plausible to infer he would have pursued a different course of action were it not for the statutory violations caused by the Letter. Simply put, Plaintiff alleges something more than a bare procedural violation. Plaintiff alleges that the text of the Letter caused him to forego his rights to verify the debt.

Lastly, protecting consumers from misinformation and misleading representations is one of the concrete interests that Congress sought to protect via the FDCPA. *See Pierre*, 2019 WL 4059154, at * 4 (citing *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir.

12

2017). Specifically, "[t]he FDCPA envisions that debtors will use accurate, non-misleading information in choosing how to respond to collection attempts and how to manage and repay their debts." *Spuhler*, 983 F.3d at 286 (citing 15 U.S.C. §§ 1692(a), (e), 1692e). The FDCPA serves this end by "giving debtors a way to dispute or verify their supposed debts." *Casillas*, 926 F.3d at 333. It is well settled that "[n]otices sent to debtors must not confuse them about the verification rights established by the Fair Debt Collection Practices Act." *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999). As such, at the very least, Plaintiff has alleged that the Letter presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect: the ability of a consumer to dispute and verify the alleged debt.

## CONCLUSION

Based upon the forgoing, Defendant respectfully requests that this Court determine it has subject matter jurisdiction over Plaintiff's Complaint and should deny Plaintiff's motion to remand and proceed to adjudicate this on the merits.

Dated: May 20, 2021

**LIPPES MATHIAS WEXLER FRIEDMAN LLP**

/s Brendan H. Little
Brendan H. Little, Esq.
Attorneys for Defendant
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
P: (716) 853-5100
F: (716) 853-5199
E: blittle@lippes.com